IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD ENGRAM-BEY,<br>No. B09354,<br><br>          Plaintiff,<br><br>vs.<br><br>ANGELA CATT,<br>DANA TYLKA,<br>JANE DOE, and<br>JOHN DOE,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 14-cv-00904-JPG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Ronald Engram-Bey, an inmate in Jacksonville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on a series of incidents that occurred while Plaintiff was housed at Robinson Correctional Center, which is located in this judicial district.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, Assistant Warden Tylka and C/O Catt informed Plaintiff that a sermon that had been mailed to him was not allowed under prison regulations and would be returned to the sender. Rather than simply return the sermon, Catt kept the original and returned a copy of the document. Plaintiff contends that there was no reason for the sermon to be copied, prison regulations do not authorize such a procedure, and Catt should not have kept the sermon for her own or other purposes.

Plaintiff filed a grievance regarding how C/O Catt had handled his mail. He was subsequently approached by Assistant Warden Tylka, who said he wanted to speak with Plaintiff. Plaintiff followed Tylka into the control room, but he balked when Tylka proceeded into "the dog room"—the room reserved for dogs (presumably search dogs). When Plaintiff did not want to go into the dog room, Tylka loudly announced, "I don't give a sh**, you want to act like a f***ing convict then I'm going to treat your ass like one." (Doc. 1, p. 8). After Plaintiff went into the room, Tylka then subjected him to an "obnoxious tirade" regarding how wrong

Plaintiff was for lodging a grievance against C/O Catt regarding the mail incident. Plaintiff was frightened and shocked, and he characterized Tylka's comments as retaliation and intimidation. Plaintiff asserts that he does not feel safe and he fears what Tylka will do next. Plaintiff also alleges that Tylka violated Illinois Department of Corrections' rules and regulations. Plaintiff filed a grievance regarding Assistant Warden Tylka's "interference."

Gina Allen of the Administrative Review Board ("ARB") sent Plaintiff a notice, letter and grievance. According to Plaintiff, it is the custom of the ARB to send correspondence as confidential, privileged mail—meaning that, pursuant to prison rules and procedures, the mail is opened and inspected in the presence of the inmate. Instead, the correspondence from the ARB was somehow routed to the Clinical Services office and then transmitted to Plaintiff in a Robinson Correctional Center envelope marked "Confidential C.S." (Doc. 1, p. 11). According to documentation attached to the complaint, prison personnel explained that when multiple grievances are sent in a single envelope, the mail is sent to the Clinical Services office, where each inmate's mail is placed in an envelope for delivery, marked confidential (*see* Doc. 1-1, p. 12). Plaintiff contends that his mail should never have been handled by Clinical Services because it was sent from Gina Allen, a member of the ARB (*see* Doc. 1, p. 11).

Plaintiff generally alleges that C/O Catt and Assistant Warden Tylka each violated his constitutional rights, and that Catt and Tylka, along with Jane Doe and John Doe, are responsible for violating his constitutional rights with respect to reading his "in/out going mail" (Doc. 1, p. 12). C/O Catt and Assistant Warden Tylka purportedly had an official policy or custom of condoning the violation of Plaintiff's constitutional rights. It is further alleged that all four defendants acted in concert to deny Plaintiff's constitutional rights—acting deliberately,

knowingly, unreasonably and in bad faith with respect to how Plaintiff's mail was handled (*see* Doc. 1, p. 13).

Lastly, the complaint takes issue with Plaintiff having to "send letters" to Catt and Tylka in order to exhaust administrative remedies, suggesting that the Illinois Department of Corrections is acting in concert with them to deny Plaintiff's constitutional rights and leave him without a remedy in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment (*see* Doc. 1, pp. 13-14).

Plaintiff seeks a preliminary and permanent injunction ensuring Defendants will not violate his constitutional rights, declaratory judgment, as well as compensatory and punitive damages (*see* Doc. 1, pp. 14-15).

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into five counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** **Defendants Assistant Warden Tylka and C/O Catt violated prison rules and procedures and Plaintiff's constitutional rights when Catt kept a sermon document mailed to Plaintiff and returned a copy, rather than the original, to the sender;**
>
> **Count 2:** **When he spoke to Plaintiff in "the dog room" and had an "obnoxious tirade," Defendant Assistant Warden Tylka retaliated against Plaintiff in violation of the First Amendment for filing a grievance against C/O Catt;**
>
> **Count 3:** **Routing mail from the ARB to the Clinical Services office violated prison rules and procedures and Plaintiff's rights under the First Amendment;**
>
> **Count 4:** **Defendants Assistant Warden Tylka, C/O Catt, Jane Doe and John Doe, individually or in conspiracy, violated Plaintiff's constitutional rights regarding how his mail was handled; and**

**Count 5: Defendants Assistant Warden Tylka and C/O Catt, in conspiracy with the Illinois Department of Corrections, have denied Plaintiff's right to due process and the equal protection of the laws in connection with the administrative remedy process.**

### Discussion

### Count 1

Count 1 stems from the incident when Assistant Warden Tylka and C/O Catt informed Plaintiff that a sermon that had been mailed to him was not allowed under prison regulations and Catt then returned a copy of the sermon, while retaining the original document.

Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Rowe*, 196 F.3d at 782. However, Plaintiff does *not* take issue with the determination that the sermon violated prison regulations and had to be returned to the sender. Rather, he takes issue with C/O Catt retaining the original document and returning a copy. He asserts that there was no reason to do anything but mark the package "return to sender." Plaintiff contends that Catt violated prison rules and procedures.

The violation of prison rules and procedures does not, by itself, violate the Constitution. Because Plaintiff does not take issue with the rejection of the sermon, there is no obvious First Amendment issue. As pleaded, the complaint fails to state a viable constitutional claim actionable under Section 1983. Therefore, Count 1 will be dismissed without prejudice.

### Count 2

Plaintiff takes issue with Assistant Warden Tylka, first, inviting him into "the dog room" and, second, with Tylka then subjecting him to an "obnoxious tirade" about filing a grievance

against C/O Catt.  Plaintiff contends Tylka was retaliating against him for having filed a grievance, and he does not feel safe and fears what Tylka will do next.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).  Retaliation for filing a grievance violates the First Amendment. *Id*.

As described in the complaint, Tylka's speaking to Plaintiff in "the dog room," by itself, would not reasonably deter First Amendment activity in the future.  Tylka allegedly stated, "I don't give a sh**, you want to act like a f***ing convict then I'm going to treat your ass like one." (Doc. 1, p. 8).  This statement, in the context of Plaintiff balking at stepping into a room within the staff control room that is used to house dogs, does not appear threatening—as described in the complaint.  A threat to treat Plaintiff as though he were a convict—which he is—does not reasonably seem like a retaliatory threat related to the mail incident.  That statement was uttered before the discussion about the grievance.

Tylka's "obnoxious tirade" about the grievance against C/O Catt, as described, appears to be a statement of opinion, not a threat of retaliation. *See, e.g., Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011) (Sheriff's disclosure of deputy's disciplinary record on a radio program was deemed merely the expression of an opinion, not retaliation or intimidation; no First Amendment claim had been stated) (citing *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 687 (4th Cir. 2000) ("[W]here a public official's alleged retaliation is in the nature of speech, in the absence of threat,

coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.")).

Although these allegations nip along the edges of the First Amendment, as pleaded the complaint does not state a claim upon which relief can be granted. The factual allegations present a possible claim, but not a probable claim, as required under *Twombly*. Count 2 will be dismissed without prejudice.

**Count 3**

Count 3 stems from mail to Plaintiff from Gina Allen of the ARB being routed through the Clinical Service office. Insofar as Plaintiff contends that prison rules and procedures were violated, no constitutional claim has been stated.

Although prison regulations may characterize mail from the ARB as being afforded privacy protections, only "legal" mail is afforded constitutional protection because of the potential for interference with an inmate's right of access to the courts. *Rowe,* 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name *and* a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff,* 418 U.S. at 577; *see also Kaufman v. McCaughtry,* 419 F.3d 678, 685–86 (7th Cir. 2005). However, a letter marked to indicate that it is from an attorney's office, but which does not indicate that it is legal mail is not afforded protection under the First Amendment. *Id*. Therefore, even if the mail sent from Gina Allen was legal mail, there is no allegation that it was marked legal mail. Plaintiff only points to a practice of ARB mail being treated as legal mail.

The complaint, furthermore, only describes an isolated incident, apparently caused by multiple pieces of mail being transmitted in a single envelope, with no readily apparent harm or interference with Plaintiff's First Amendment rights, which is insufficient to state a colorable claim. *See generally Lewis v. Casey*, 518 U.S. 343, 351 (1996) (actual injury required for a First Amendment access to the courts claim).

Count 3 suffers from another fatal flaw: the mail routing incident is not linked to any named defendant. Perhaps Jane Doe and John Doe were involved, but the complaint does not make that clear. Furthermore, as will be discussed in more detail relative to Count 4, a conspiracy has not been adequately pleaded.

Count 3 will be dismissed without prejudice.

**<u>Count 4</u>**

The complaint makes a broad assertion that Defendants Assistant Warden Tylka, C/O Catt, Jane Doe and John Doe, individually or in conspiracy, through a policy or practice regarding how mail was handled, violated Plaintiff's constitutional rights. Each Defendant's individual involvement has been addressed relative to Counts 1 and 2.

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)). The bald assertions in the complaint that the Defendants acted "in concert"—in conspiracy—fail to satisfy the *Twombly* pleading standard. "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable

jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.,* 197 F.3d 256, 263 (7th Cir.1999)). There is also nothing to underpin th assertion of an unconstitutional policy or practice.

Count 4 will be dismissed without prejudice.

**Count 5**

Count 5 is premised upon the general allegation that the Illinois Department of Corrections' administrative remedy process somehow requires Plaintiff to "send letters" to Assistant Warden Tylka and C/O Catt, thereby denying Plaintiff due process and the equal protection of the laws in violation of the Fourteenth Amendment.

Plaintiff again inadequately claims conspiracy, and the Illinois Department of Corrections is not a named defendant. Moreover, Plaintiff offers only this bald assertion of constitutional violations without offering any factual allegations whatsoever to underpin the claims. Count 5 will be dismissed without prejudice.

**Injunctive Relief**

Insofar as Plaintiff seeks injunctive relief, the Court notes that since the events at issue in this complaint, Plaintiff has been transferred from Robinson Correctional Center to Jacksonville Correctional Center, away from the Defendants reach. Consequently, his prayer for injunctive relief would appear to be moot.

**Disposition**

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNTS 1-5** are all **DISMISSED** without prejudice; consequently, Defendants **ANGELA CATT**, **DANA TYLKA**, **JANE DOE** and **JOHN DOE** are all **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that on or before **October 3, 2014**, Plaintiff shall file an amended complaint, or this action will be dismissed with prejudice and Plaintiff will be assessed a "strike" for purposes of 28 U.S.C. § 1915(g).  Any amended complaint must undergo preliminary review pursuant to 28 U.S.C. § 1915A.

Plaintiff is **ADVISED** that Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $400 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Plaintiff's pending motion for leave to proceed *in forma pauperis* (Doc. 2) will be decided by separate order.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 11, 2014**

*s/J. Phil Gilbert*
**United States District Judge**